```
                   UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF MASSACHUSETTS
```

VALLEY FORGE INSURANCE COMPANY     )
AND AMERICAN CASUALTY OF           )
READING, PA,                       )
            Plaintiffs             )
                                   )
         v.                        ) C.A. No. 09-cv-30038-MAP
                                   )
THE CARSON CENTER FOR HUMAN        )
SERVICES, INC., CAROL FIELD,       )
AND DAVID MURPHY, GUARDIAN OF      )
THE ESTATE OF THE CHILD,           )
            Defendants             )

            <u>**AMENDED MEMORANDUM AND ORDER REGARDING**</u>
            <u>**PLAINTIFF'S MOTION FOR RECONSIDERATION AND**</u>
            <u>**DEFENDANTS' MOTION FOR RECONSIDERATION**</u>
                      **(Dkt. Nos. 65 & 67)**

                        March 10, 2011

PONSOR, D.J.

                     I.   <u>INTRODUCTION</u>

     On September 11, 2005, an eleven-year-old child was beaten nearly to death by her adoptive mother and stepfather. More than five years later, the real villains in this tragic case are deceased or incarcerated. Before the court now is a lawsuit between certain insured clinicians charged with being indirectly responsible for the child's injuries, and their insurers. Resolution of the

particular dispute embodied in the parties' motions for reconsideration requires the interpretation of a single word -- ironically, "care."

Plaintiffs were the insurers of Defendant The Carson Center for Human Services, Inc. ("Carson Center") and, as such, insurers of its employee, licensed social worker Defendant Carol Field ("Field") for a portion of the time that the abused child was a patient served by Carson Center. Defendant David Murphy, as legal guardian of the child, has brought suit against his now co-defendants and others in the Superior Court of the Commonwealth of Massachusetts, alleging various counts, including failure to diagnose and negligent supervision. Plaintiffs filed a twenty-five count complaint in this court seeking declaratory judgment that none of their policies covered the charges alleged in the Superior Court underlying suit, naming both the plaintiff and defendants in that suit as Defendants here. (Dkt. No. 40, Second Am. Compl.)

In September 2010, the parties were in settlement negotiations, and the court denied without prejudice their cross motions for summary judgment (Dkt. Nos. 41 & 46).

After these negotiations broke down, the parties filed motions for reconsideration (Dkt. Nos. 65 & 67), and the court heard argument on the underlying summary judgment motions. By agreement of the parties, the case has contracted to only three of the twenty-five counts, and, accordingly, the court will deem Counts I-XXII to be voluntarily dismissed. The remaining counts, XXIII, XXIV, and XXV, are for declaratory judgment as to the application of the Abuse and Molestation Exclusion Endorsement to the Human Service Health Care Facility Professional Liability Coverage Form of the 2001-2002 Primary Policy and the 2002-2003 Primary Policy and the Commercial Umbrella Policies for 1998-2003. As to these, the court will, very reluctantly, allow Plaintiffs' motion and deny Defendants' motion. The declaratory judgment requested as part of the demands for relief at the conclusion of Counts XXIII, XXIV, and XXV of the second Amended Complaint (Dkt. No. 40) will be granted.

## II. FACTS

Plaintiffs insured Defendant Carson Center from December 19, 1998, through December 19, 2003. For purposes of this suit, Defendant Murphy's claims only concern the

years 2002 and 2003. (Dkt. No. 43, Ex. 6.) Defendant Field worked as a social worker and therapist at Defendant Carson Center in Westfield, Massachusetts, where she first met the child on October 30, 2002. (Dkt. No. 43, Ex. 7, Field Interrog. ¶ 3.) Beginning on that date, Defendant Field began to see the child weekly. These sessions continued through December 31, 2002, when the child was hospitalized at Providence Behavioral Health Hospital. (Id.) One month later, on January 28, 2003, the child had been released, and her weekly sessions with Defendant Field resumed, with occasional breaks due to illness or other reasons, until August 21, 2003. (Id.) At this point, a break in the weekly visits occurred due to the child's reported physical illnesses, followed by her brief return to Providence Hospital on October 10, 2003. (Id.) After the child's release, the weekly visits resumed again and continued through the end of 2003. (Id.)

Plaintiffs issued insurance policies to Defendant Carson Center each year from December 19, 1998, through December 19, 2003. The relevant policies are the Valley Forge Commercial General Liability Coverage and Professional

Liability Coverage for the period from December 19, 2001, through December 19, 2002, and American Casualty Commercial General Liability Coverage and Professional Liability Coverage for the period from December 19, 2002, through December 19, 2003. These policies (collectively "the Primary Policies") contained Sexual or Physical Abuse or Molestation Specified Liability Coverage. Additionally, Plaintiffs issued commercial umbrella policies ("the Umbrella Policies") for each year, which contained Sexual or Physical Abuse or Molestation Specified Liability Coverage.

### III. DISCUSSION

Plaintiffs seek a declaratory judgment that the insurance policies do not cover the alleged conduct due to exclusions that are applicable to the underlying claims.

A. <u>Legal Framework</u>.

The court "construe[s] an insurance policy under the general rules of contract interpretation [beginning] with the actual language of the polic[y], given its plain and ordinary meaning." <u>Brazas Sporting Arms, Inc. v. Am. Empire Surplus Lines Ins. Co.</u>, 220 F.3d 1, 4 (1st Cir. 2000). The burden is on the insurer to demonstrate that an exclusion exists that precludes coverage, and "any ambiguities in the

exclusion provision are strictly construed against the insurer." Id. at 4.  Significantly, ambiguity is not presumed simply due to the parties' disagreement about the proper interpretation of a policy.  See id. at 4-5 ("Ambiguity exists when the policy language is susceptible to more than one rational interpretation.  But it does not follow that ambiguity exists solely because the parties disagree as to the provision's meaning.").

B.  <u>Counts XXIII and XXIV: Abuse and Molestation Exclusion Endorsement to the Human Service Health Care Facility Professional Liability Coverage Form of the 2001-2002 and 2002-2003 Primary Policies</u>.

Each of the Primary Policies contained an exclusion for abuse or molestation, which read as follows:

> This insurance does not apply to damages arising out of:
>
> 1. The actual or threatened sexual or physical abuse or molestation by anyone to any person while in the care, custody or control of any insured;
>
> 2. The actual or threatened sexual or physical abuse or molestation by any person while in the care, custody or control of any insured to anyone; or
>
> 3. The negligent:
> a. Employment;
> b. Investigation;
> c. Supervision;
> d. Reporting to the proper authorities, or failure to so report; or
> e. Retention;
> of a person for whom any insured is or ever was legally responsible and whose conduct would be excluded by 1. or 2. above.

(Dkt. No. 70, Ex. 1.)

The parties agree, and the court does not dispute, that Paragraphs 2 and 3 are inapplicable. The parties offer divergent interpretations of Paragraph 1, however, and the court's ultimate determination about what it means to be "in the care of" Defendants Carson Center and Field will be dispositive of the applicability of the insurance policy.

1. The Parties' Interpretations.

By its terms, the exclusion applies to damages arising out of physical abuse to any person (here, the child) caused by anyone (here, the child's adoptive parents) while that person (the child) was in the care, custody or control of the insured (here, Defendants Carson Center and Field). Because there is no dispute that the child was not in the custody or control of Defendants Carson Center and Field, applicability of the exclusion boils down to whether she was in their care.

Defendants' suggested interpretation of Paragraph 1 is that the exclusion bars a claim of coverage only where the injury arising out of physical abuse occurred when the injured party was physically in the care of the insured. Here, then, the exclusion would not apply because the abuse of the child did not occur while she was on the grounds of Defendant Carson Center or in the office of Defendant Field,

but was rather in her home where she was abused by her mother and stepfather.

Defendants' interpretation is consistent with property law, namely that liability for damages arises only where an object is in the physical possession of the insured. See, e.g., Acadia Ins. Co. v. Peerless Ins. Co., 679 F.Supp.2d 229, 241 (D. Mass. 2010) ("[W]hether property damage comes within the ambit of the 'care, custody, and control' provision depends upon the sufficiency of the evidence that the property was in the possessory, and not merely the proprietary, control of the insured at the time that it was damaged."). A patient receiving medical services and an inanimate object, however, are not sufficiently analogous to warrant the application of this legal principle. The use of the word "care" in relation to a physical object is necessarily much different from the use of the same term in relation to a child receiving medical or therapeutic services.

Plaintiffs, for their part, contend that the child was in the care of Defendant Carson Center and Field by virtue of her regular appointments with Defendant Field. They point to an unreported decision out of the Eastern District of Pennsylvania in support of their theory that a child need not be in physical control of the insured for the exclusion

to apply.  Children's Aid Soc. of Montgomery County v. Great American Ins. Co., 1995 WL 251374 (E.D. Pa. Apr. 28, 1995). In Children's Aid, the plaintiff had been sued by a foster child's representative, alleging that the plaintiff had failed to remove the child from an abusive home.  Id. at *4. The insurance policy contained an exclusion nearly identical to the one here, which the plaintiff claimed was inapplicable on the grounds that the child was not in its care or control at the time of the abuse.  Citing Webster's Dictionary, the court defined "care" as "'charge, supervision management; responsibility for or attention to safety and well-being."  Id. (quoting Webster's Third New International Dictionary of the English Language 338 (1986)).  Based on this definition, the Pennsylvania court held that the child was in the plaintiff's care due to an underlying contract between the plaintiff and the county, in which the plaintiff agreed to supervise youth in need in the county.  Id.  Thus, given that the Children's Aid court relied on a contractual relationship absent on these facts,

the case is only moderately helpful.[1]

With little useful case law offered by either party or uncovered by the court, the court will fall back on standard rules of construction.

2. <u>"in the care of"</u>.

"As in most contract interpretation questions, we start here with the text." <u>United States v. Charter Int'l Oil Co.</u>, 83 F.3d 510, 517 (1st Cir. 1996). The starting point for any interpretation is the plain meaning of the words. "Where, as here, the words of an insurance policy are plain, [the court must] 'refrain from conjuring up ambiguities' and likewise 'abjure unnecessary mental gymnastics which give the terms of the policy a forced or distorted construction.'" <u>Burnham v. Guardian Life Ins. Co.</u>, 873 F.2d 486, 490-91 (1st Cir. 1989) (quoting <u>Taylor v. Aetna Casualty & Surety Co.</u>, 867 F.2d 705, 706 (1st Cir. 1989)).

With this in mind, the court turns first to the dictionary definition. "Care" is defined as "charge, supervision." <u>Merriam-Webster</u> (2011). There is nothing

---

[1] The sole case in Massachusetts addressing the word "care" concerns a woman who committed suicide in the holding cell of a police department. <u>Jefferson Ins. Co. v. Holyoke</u>, 503 N.E.2d 474 (Mass. App. Ct. 1987). In that context, the Massachusetts Appeals Court declared that "the phrase 'care, custody or control,' [is] clear and free from ambiguity." <u>Id.</u> at 477-78.

-10-

inherent in this definition to suggest the physical proximity that Defendants urge. This is particularly significant because "[e]very word in an insurance contract 'must be presumed to have been employed with a purpose and must be given meaning and effect whenever practicable.'" Boston Gas Co. 1 v. Century Indem. Co., 910 N.E.2d 290, 355 (Mass. 2009) (quoting Allmerica Fin. Corp. v. Certain Underwriters at Lloyd's, London, 871 N.E.2d 418, 425 (Mass. 2003)). Physical proximity is required by "custody," which is defined as "<u>immediate</u> charge and control (as over a ward or a suspect) exercised by a person or an authority." Merriam-Webster (2011) (emphasis added). Thus, to impose a physical component onto "care" is to void the distinction between the two terms, a clear infraction of the rules of contract interpretation.[2] See Fed. Deposit Ins. v. Singh, 977 F.2d 18, 22 (1st Cir. 1992) (quoting Tupper v. Hancock, 64 N.E.2d 441, 442 (Mass. 1946)) ("'It is a canon of construction that every word and phrase of an instrument is if possible to be given meaning, and none is to be rejected as surplusage if any other course is rationally possible.'").

---

[2] Control: "power or authority to guide or manage." Merriam-Webster (2011).

The court concludes that, with regard to this exclusion, to be "in the care of" the insured does not require a person to be in the physical presence of the insured. To be in the care of the insured requires simply to be under the supervision or charge of the insured.

3. <u>Inescapable Facts</u>.

Having so found, the court's next step is to determine whether the child was, on the record of this case, indisputably in the care of Defendants Carson Center and Field. At oral argument, defense counsel pointed out, reasonably, that an annual appointment with a medical provider might be insufficient to permit the court to find that a patient was "in the care of" a provider. The situation here is vastly different however.

According to Defendant Field's answers to interrogatories, she saw the child at Defendant Carson Center approximately twenty-five times in the fourteen months between October 30, 2002, and December 19, 2003. (Dkt. No. 43, Ex. 7, Field Interrog. ¶ 3.) Defendant Field's extensive notes demonstrate that she was actively providing care to the child on a near-biweekly basis for

more than a year.  Passing no judgment on Defendant Field's liability for the child's injuries, the court must conclude, for purposes of the exclusion, that the child was in her care during this time.

The court's opinion is supported by Defendant Murphy's consistent description -- in his role as plaintiff suing on behalf of the child in the state Superior Court complaint -- of the child as a patient in the "care" of Defendant Field. In this complaint, he describes her as "under the care of Field from 2002 until September 11, 2005." (Dkt. No. 43, Ex. 6, ¶ 8.)  Similarly, the charges against Defendant Field arise out of alleged negligence "in her care and treatment" of the child. (Id. ¶ 38.)  In his opposition to Plaintiffs' motion for summary judgment in this court, he has described the relevant time period as beginning in October 2002, "when The Child came under the care of Carson Center for the second time."  (Dkt. No. 70, Def. Murphy Mem. in Opp. to Pls.'s Mot. for Summ. J., at 4.)

This decision may have the unfortunate, and possibly unfair, result of reducing insurance coverage for Defendants Carson Center and Field in the face of the claim by their co-Defendant Murphy in the state Superior Court.  However,

Defendant Murphy's claim in his state court complaint that the child suffered injuries as a result of negligence by Field, committed while the child was in her "care," cannot be reconciled with his claim in this federal court that, for purposes of coverage, the child was <u>not</u> in Field's "care." The word cannot carry one meaning for purposes of liability and a different one for purposes of coverage. Accordingly, the court must allow Plaintiffs' motion for summary judgment on Counts XXIII and XXIV.

C. <u>Count XXV: Umbrella Policies, 1998-2003</u>.

The Umbrella Policy exclusion is substantively identical to that of the Primary Policies. The insurance does not apply to damages "arising out of: The actual or threatened abuse or molestation: a: of a 'patient' or 'resident' of the insured while in the care, custody or control of any insured." (Dkt. No. 70, Ex. 3.) Thus, the court's reasoning above applies to the Umbrella Policy exclusion as well, and the court will allow Plaintiffs' motion for summary judgment on Count XXV.

IV. <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs' motion to reconsider (Dkt. No. 65) is hereby ALLOWED, and Defendants'

motion to reconsider (Dkt. No. 67) is hereby DENIED. Upon reconsideration, Plaintiff's motion for summary judgment (Dkt. No. 41) is hereby ALLOWED as to Counts XXIII, XXIV, and XXV. The Declaratory Judgment as requested in the Second Amended Complaint (Dkt. No. 40) as to Count XXIII (Id. ¶ 238), Count XXIV (Id. ¶ 246), and Count XXV (Id. ¶ 255) is hereby granted. Given that these rulings terminate the case with regard to the only extant counts (Counts I-XXII having being dismissed by agreement), this case may now be closed.

    It is So Ordered.

                                        /s/ Michael A. Ponsor
                                        MICHAEL A. PONSOR
                                        U. S. District Judge